Filed
D.C. Superior Court
05/08/2015 13:38PM
Clerk of the Court

SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTELECT CORPORATION<br>4000 Dillon Street<br>Baltimore, Maryland 21224 | ) | |
| Plaintiff | ) | Civil Action No. 2015 CA 003401 B |
| v. | ) | |
| CELLCO PARTNERSHIP GP<br>1209 Orange Street<br>Wilmington, Delaware 19801 | ) | SERVE: CT Corporation System<br>1015 15th Street, NW<br>Washington, DC 20005 |
| NEW CINGULAR WIRELESS, PCS, LLC<br>1025 Lenox Park Boulevard NE<br>Atlanta, Georgia 30319 | ) | SERVE: CT Corporation System<br>1015 15th Street<br>Washington, DC 20005 |
| APC REALTY AND EQUIPMENT CO., LLC<br>6200 Sprint Parkway<br>Overland Park, Kansas 66251 | ) | SERVE: Corporation Service Company<br>1090 Vermont Ave., NW<br>Washington, DC 20005 |
| NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC.<br>6500 Spring Parkway<br>Overland Park, Kansas 66251 | ) | SERVE: Corporation Service Company<br>1090 Vermont Ave., NW<br>Washington, DC 20005 |
| T-MOBILE NORTHEAST, LLC<br>12920 SE 38th Street<br>Bellevue, Washington 98006 | ) | SERVE: Corporation Service Company<br>1090 Vermont Ave., NW<br>Washington, DC 20005 |
| Defendants | ) | |

**COMPLAINT**

Plaintiff alleges:

1. This civil action, for which plaintiff demands trial by jury, arises out of the installation of a cellular communication system in the Washington Metro stations and rail tunnels

A TRUE COPY
TEST:
JUN 0 9 2015
Clerk, Superior Court of
the District of Columbia
By J. Vash
Deputy Clerk
15 CA 3401

("the Project"), for the joint use by the Washington Metropolitan Area Transit Authority ("WMATA") and a joint venture of four cellular telephone carriers: Verizon, Sprint/Nextel, T-Mobile and AT&T/ New Cingular Wireless (collectively, "the Carrier Consortium").

2. As a public-private partnership, the Carrier Consortium assumed the role of the Owner. Plaintiff's cause of action is grounded on the failure of the Carrier Consortium to provide full surety bond coverage, as required by the contract documents, to assure payment to those persons supplying labor and material to the Project, resulting in a substantial loss to the plaintiff when the Carrier Consortium's contractor became insolvent and defaulted on its contract obligations.

The Parties

3. Plaintiff Intelect Corporation ("Intelect") is a corporation organized and existing under the laws of the State of Maryland which maintains its place of business in Baltimore, Maryland, and which is duly authorized to transact business in the District of Columbia. Intelect is engaged in the business of engineering, installing and maintaining complex communications systems for the transportation industry.

4. Defendant Cellco Partnership GP ("Cellco/Verizon") is a General Partnership which does business nationally under the trade name "Verizon Wireless," which is organized and existing under the laws of the State of Delaware and which is duly authorized to engage in business in the District of Columbia. Cellco/Verizon is engaged in business as a cellular telephone carrier.

5. Defendant New Cingular Wireless ("AT&T/New Cingular"), is a limited liability company organized and existing under the laws of the State of Delaware for which AT&T Mobility Corporation, a Delaware corporation, is the Manager, and which is duly authorized to

transact business in the District of Columbia. AT&T/New Cingular is engaged in business on a national basis as a cellular telephone carrier.

6. Defendant APC Realty and Equipment Company, LLC, ("APC/Sprint Nextel"), which is engaged in business on a national basis under the trade names "Sprint" and "Nextel," is a limited liability company organized and existing under the laws of the State of Delaware, and which is duly authorized to transact business in the District of Columbia. APC/Sprint Nextel is engaged in business on a national basis as a cellular telephone carrier.

7. Defendant Nextel Communications of the Mid-Atlantic, Inc. ("Sprint/Nextel Mid-Atlantic") is a corporation organized and existing under the laws of the State of Delaware, which is duly authorized to transact business in the District of Columbia. Sprint/Nextel Mid-Atlantic is engaged in business in the Mid-Atlantic region as a cellular telephone carrier.

8. Defendant T-Mobile Northeast, LLC ("T-Mobile") is a limited liability company organized and existing under the laws of the State of Delaware, which is part of a corporate group with its headquarters in Bellevue, Washington, and which is duly authorized to engage in business in the District of Columbia. T-Mobile is part of a national network acting as a cellular telephone carrier.

9. Cellco/Verizon, AT&T/New Cingular, APC/Sprint Nextel-Sprint Nextel Mid-Atlantic, and T-Mobile are equal members of the Carrier Consortium joint venture.

**Background and Setting**

10. Pursuant to Section 601(e), Division B of the Passenger Rail and Improvement Act of 2008 (P.L. 110-432), WMATA was required, as a condition of receiving $1.5 billion in dedicated Federal funds, to design, build, operate and maintain a Wireless Communications

Infrastructure to facilitate use by Metro riders of their cellular telephones in Metro stations and rail tunnels.

11. On February 26, 2009, the Metro Board granted approval to enter into a Master License Agreement with the Carrier Consortium to design, build, operate, and maintain seamless wireless communications coverage for 47 underground stations and 50.5 miles of tunnels for use by the members of the Consortium, and to construct a separate but overlapping Wireless Communications Infrastructure for use by Metro.

**The Relevant Contracts**

12. The resulting contract for the Project between WMATA and the Carrier Consortium, Turnkey Equipment Purchase, System Design and Construction Services Agreement, WMATA Contract # CQ8119, required the Consortium to fund the Project at its own expense, and to further agree to a revenue sharing arrangement, wherein the Consortium would pay to WMATA a portion of its income from the use of the system. Thus the Carrier Consortium assumed the role of Project Owner with respect to the construction contractor.

13. While WMATA's internal policies and standard contract forms require its construction contractors to provide surety bonds in the amount of the 100% of the contract to assure payment to those persons who supply labor and materials to its projects, since the Project was a public-private partnership funded by the contractor, WMATA only required the Carrier Consortium to obtain a nominal payment bond, relying on the Carrier Consortium to require its contractor to bond the Project in the full amount of the construction contract.

14. By Contract dated June 18, 2009 in the amount of $65,671,000, the Carrier Consortium contracted with Powerwave Technologies, Inc. ("Powerwave") for the construction of the Project ("the Construction Contract").

15. The Construction Contract provided for the construction of the entire Project as a single, unitary contract. Although the schedule for the Construction Contract provided for four milestones, denominated "phases," there was nothing in the agreement which specified the dollar value of the work included within such phases.

16. The Construction Contract required Powerwave to provide for bonding in the amount of 100% of the full contract price, to assure payment to those persons who supplied labor and material to the Project. There was nothing in the Construction Contract permitting Powerwave to provide bonding for anything less than 100% of the full value of the contract, nor to provide bonding by Project phase.

17. By subcontract agreement entered into on June 16, 2010 in the amount of $5,629,122.27, Powerwave contracted with Intelect for a portion of the Project. The price for Intelect's subcontract was for its work on the entire Project, not by Project phase.

18. Powerwave, as Principal, and each of the four members of the Carrier Consortium, as joint obligees, obtained a payment bond ("the Payment Bond") from RLI Insurance Company in order to assure payment to those persons who supplied labor and materials to the Project. A copy of the Powerwave Payment Bond is attached hereto as Exhibit A and incorporated by reference.

19. Unknown to Intelect at the time it entered into its subcontract with Powerwave, the Payment Bond issued for the Project did not cover the entire Project, but rather only covered "Phase I," notwithstanding that there was no dollar value provided in the Construction Contract for separate phases.

20. Upon receipt by the Carrier Consortium of a copy of the Powerwave Payment Bond, it was apparent from the face of the bond instrument that it did not comply with the terms

of the Construction Contract, which mandated bonding for 100% of the amount of the Construction Contract ($65,671,000), not the amount of the Payment Bond provided by Powerwave, which was issued for only $5,000,000.

21. It was further obvious and apparent to the members of the Carrier Group, upon receiving a copy of the Payment Bond at issue, that the Payment Bond obtained by Powerwave did not meet Powerwave's contractual obligation to bond the Project, in that notwithstanding that the Project was divided into phases only for purposes of scheduling, the bond instrument was limited to "Phase I."

**Powerwave's Breach of Contract**

22. During the course of the Project, Powerwave experienced financial difficulties, and materially breached its contract with Intelect by failure to make payments to Intelect when due.

23. Powerwave failed to make payment to Intelect for its invoices # 104 ($33,102.58), # 105 ($21,384.95), # 106 ($102,801.36); #107 ($53,589.82); # 108 ($260,391.23); and # 109 (#151,592), and failed to process valid change orders in the amount of $323,914.68.

24. Intelect submitted its final invoice to Powerwave, dated January 30, 2013, for retainage in the amount of $69,239.51. The total amount due from Powerwave to Intelect after Powerwave defaulted on its contract with the Carrier Consortium was $1,013,016.83.

25. Pursuant to the First Breach Doctrine, Powerwave's material breach of contract relieved Intelect of its obligations under its subcontract and barred Powerwave from asserting breaches by Intelect.

26. Notwithstanding Powerwave's material breach of contract, in full and complete reliance on the Payment Bond, Intelect continued to supply labor and materials to the Project for the benefit and use by the Carrier Consortium.

27. All of the labor, materials and expertise provided by Intelect to Powerwave inured to the direct benefit of the Carrier Consortium, in that the construction of the Project to which Intelect contributed was part of the Carrier Consortium's obligations to WMATA, as well as for the Carrier Consortium's own benefit, as a profit-making venture.

28. Notwithstanding that in the Fall of 2012 the Carrier Consortium had actual knowledge that Powerwave was financially unstable and that the work being performed by Powerwave's subcontractors and suppliers were not covered by the Payment Bond for which the members of the Carrier Consortium were named obligees, the Carrier Consortium continued to accept the benefits of Intelect's performance.

COUNT I
(Negligence)

29. Each of the members of the Carrier Consortium had actual knowledge, in its capacity as named obligees in the bond instrument, that those persons, including Intelect, who would be supplying labor and materials to the Project would be doing so, in the event Powerwave failed to pass on payments due to lower-tier parties, in reliance for payment on the Powerwave Payment Bond.

30. After Powerwave defaulted on its payment obligations to Intelect in late 2012, both an officer of Intelect and counsel for Intelect submitted requests to the Carrier Consortium for a copy of the Powerwave Payment Bond, which the Carrier Group refused to provide.

31. It was only after Intelect was able to obtain a copy of the bond indirectly, through its insurance agent, that Intelect discovered, in January 2013, that the bond was limited in

amount and restricted to Phase I, and that the monies then due from Powerwave to Intelect were primarily for work performed in Phases II and III.

32. Each of the members of the Carrier Consortium, in their capacities as obligees on the Powerwave Payment Bond, had a duty of due care to those persons who supplied labor and materials to the Project to assure them of full and complete surety bond coverage, not just partial coverage for Phase I.

33. Upon learning of Powerwave's financial instability, each of the other members of the Carrier Consortium had an affirmative duty of due care to notify Intelect that its continued supply of labor and materials to the Project was at Intelect's risk, in that the outstanding payment bond for which the Carrier Consortium members were obligees did not cover the work that they were performing on Phases II and III, which was then underway.

34. Each of the members of the Carrier Consortium negligently breached their duty of due care to Intelect by their failure to assure full and complete coverage under the Payment Bond, and further negligently breached their duty of due care by failing to provide timely notice to Intelect that it was at risk in supplying labor and materials to the Project once they became aware of Powerwave's financial instability.

35. As a direct and proximate result of the negligence of each of the members of the Carrier Consortium, Intelect suffered a loss in the amount of $1,013,016.83 that would have been covered by the Powerwave Payment Bond had the bond covered the entire Project, not just Phase I.

**COUNT II**
**(Negligent Misrepresentation)**

36. Paragraphs 1-35 are incorporated herein by reference and realleged as though more fully set out herein.

37.     By contractually mandating in its contract with Powerwave that the Project be bonded, the Carrier Consortium undertook the duty to assure meaningful and effective coverage by the surety, and implicitly represented to those persons who supplied labor and materials to the Project, including Intelect, that they would be paid by the surety if not paid by Powerwave.

38.     At no time did the Carrier Consortium reveal to those persons who were supplying labor and materials to the Project, including Intelect, that the Project was only partially bonded.

39.     Intelect reasonably relied on the Payment Bond to obtain payment if not paid by Powerwave, and would not have entered into its Subcontract Agreement with Powerwave had Intelect known that the Project was only partially bonded.

40.     The Carrier Consortium had a duty of due care to those persons, including Intelect, who supplied labor and materials to the Project to advise them that the Project was only partially bonded, and that they were at risk of loss if they continued to work on the Project beyond Phase I.

41.     By its failure to advise Powerwave's subcontractors and suppliers that they were at risk in working on Phases II and III of the Project, the Carrier Consortium implicitly represented to such parties, including Intelect, that they would be paid by the Payment Bond surety if not paid by Powerwave.

42.     The Carrier Consortium's conduct constituted negligent misrepresentation.

43.     As a direct and proximate result of the negligent misrepresentation of the Carrier Consortium, Intelect suffered a loss in the amount of $1,013,016.83 that would have been covered by the Powerwave Payment Bond had the bond covered the entire Project, not just Phase I.

**COUNT III**
**(Third-Party Beneficiary of the Contract Documents)**

44. Paragraphs 1-43 are incorporated herein by reference and realleged as though more fully set out herein.

45. The Contract Documents which formed the subcontract agreement between Powerwave and Intelect incorporated by reference the terms and conditions of the contract between Powerwave and the Carrier Consortium, which in turn incorporated the documents which constituted the contract between the Carrier Consortium and WMATA, which included WMATA's standard specifications and General Conditions for use in construction projects.

46. WMATA's General Conditions require its contractors to provide performance and payment bonds in the full amount of its construction contracts.

47. Because the Project involved a public-private partnership funded by the Carrier Consortium, WMATA waived its normal bonding requirements, only requiring the Carrier Consortium to provide nominal bonds in light of the fact that the construction contractor hired by the Carrier Consortium would be providing such bonding.

48. Each of the members of the Carrier Consortium were indemnitors to the surety which provided the bonds for which WMATA was the obligee. Thus the purpose of the Payment Bond obtained by Powerwave pursuant to the Carrier Group-Powerwave contract, in addition to assuring payment to those persons who supplied labor and materials to the Project under contract with Powerwave, was to substitute the nominal bond which had been jointly obtained by each of the members of the Consortium with the Powerwave Bond.

49 Each of the four members of the Carrier Consortium were named obligees under the Powerwave Bond.

50. As a person who was contractually obligated under its subcontract with Powerwave to supply labor and materials to the Project, Intelect was within the class of persons who were intended beneficiaries of the Powerwave Payment Bond.

51. Although the Carrier Group was a promisee, not a promisor, with respect to the specific contract clause in the Carrier Group-Powerwave Construction Contract which required bonding, under the Contract Documents as a whole, the Carrier Group had an obligation to WMATA, in exchange for a waiver of the normal requirement of full bonding by the Carrier Group, to assure that Powerwave obtained bonding in the full amount of the Carrier Group-Powerwave Construction Contract.

52. The Carrier Consortium breached its obligations under the Contract Documents to to assure the issuance of a proper bond, covering the entire Project ($65,671,000), not the amount of the Payment Bond provided by Powerwave, which was issued for only $5,000,000 for only what purported to be "Phase I."

53. As a direct and proximate result of the breach of the provision of the of the Contract Documents requiring full bonding, of which Intelect was in the class of intended beneficiaries, Intelect suffered a loss in the amount of $1,013,016.83 that would have been covered by the Powerwave Payment Bond had the bond covered the entire Project, not just Phase I.

**COUNT IV**
**(Implied Contract - Quantum Meruit)**

54. Paragraphs 1-53 are incorporated herein by reference and realleged as though more fully set out herein.

55. The primary purpose of the Project from the perspective of the members of the Carrier Consortium was the revenue to be derived from use of their cellular services in Metro

stations and tunnels, less the share of such revenue they were required to pay to WMATA. Thus the labor and materials supplied to the Project by Intelect was accepted by the Carrier Consortium for their members own benefit, as well as in furtherance of the Carrier Consortium's contractual obligations to WMATA.

56. The Carrier Consortium had knowledge that the source of the monies to be used to pay Intelect for the labor and materials supplied by Intelect to the Project was the Carrier Consortium itself, and that Powerwave was a mere conduit for payment for which the ultimate source was the Carrier Consortium.

57. The basis for the payment process for the Project involved the submission by Powerwave to the Carrier Consortium of a Schedule of Values that set forth each line item of work required for the Project, and the dollar value of each line item.

58. Intelect, in turn, prepared its own Schedule of Values which set forth its own line items of work and the dollar value thereof.

59. Each month, Powerwave would consult with the Carrier Group and come to agreement as to the percentage of completion that had been reached for each line item of work. Powerwave would then consult with Intelect and come to similar agreement as to the percentage of completion that had been reached for each line item of Intelect's work.

60. Based on the agreed percentages of completion, each month Intelect would then submit a Payment Application to Powerwave, which in turn would be incorporated into a Payment Application submitted by Powerwave to the Carrier Consortium. Each monthly payment made by the Carrier Consortium to Powerwave would include a readily identifiable amount that represented work performed by Intelect, which the Powerwave-Carrier Consortium

contract required be promptly paid by Powerwave to Intelect. Thus for all practical purposes, Powerwave acted as a conduit for payment from the Carrier Consortium.

61. As a further means of assuring that those persons who supplied labor and materials for use by the Carrier Consortium were paid (in addition to the Payment Bond), the Carrier Consortium required Powerwave to issue as part of its monthly payment applications a Certificate attesting that out of the previous month's payment from the Carrier Consortium to Powerwave, that Powerwave had made payment to its subcontractors and suppliers, less retainage.

62. To the extent that in the Fall of 2012 the Carrier Consortium did not already have actual knowledge that Powerwave was becoming insolvent and unable to pay its subcontractors and suppliers, a notice from Intelect's counsel dated December 18, 2012 put the Carrier Consortium on formal notice that Powerwave had materially breached its contractual obligations to Intelect, by failing to pay monies that had been requisitioned on behalf of Intelect by Powerwave.

63. Powerwave had a contractual obligation to the Carrier Consortium to make prompt payments to its subcontractors and suppliers on whose behalf Powerwave had submitted payment requisitions.

64. At the time Intelect placed the Carrier Consortium on notice that Powerwave had failed to make payments to Intelect for work performed by Intelect, the Carrier Consortium was holding retainage and other monies due and payable to Powerwave that the Carrier Consortium was contractually permitted to pay directly to Intelect.

65. The Carrier Consortium was aware that Intelect was looking to the Carrier Consortium as the ultimate source of payment to Intelect, and the Carrier Consortium had within

its power the ability to cure Powerwave's default by making direct payment to Intelect, thereby effecting an implied contract between the Carrier Consortium and Intelect. The Carrier Consortium breached that implied contract by failing to take action to cure such default.

66. The Carrier Consortium accepted the benefit of the labor and materials provided to the Project by Intelect knowing that Intelect was expecting to be paid therefor, and principles of equity require that the Carrier Consortium make payment to Intelect for such labor and materials.

67. Intelect is entitled to recover from the Carrier Consortium in quantum meruit the fair value of the labor and materials it provided to the Project for which it has not been paid, in the amount of $1,013,016.83.

COUNT V
(Unjust Enrichment)

68. Paragraphs 1-67 are incorporated herein by reference and realleged as though more fully set out herein.

69. The Carrier Consortium received the benefit of the labor, materials and knowhow provided to the Project by Intelect, knowing that Intelect was expecting to be paid therefor, through monies requisitioned by Powerwave to the Carrier Consortium on behalf of Intelect.

70. The Carrier Consortium failed to make full payment to Powerwave for labor, materials and knowhow provided to the Project by Intelect.

71. It would be unjust for the Carrier Consortium to accept the benefits provided to it by Intelect without paying therefor, and considerations of justice and equity demand that the judgment be awarded in favor of Intelect for the fair value of the labor, materials and know-how provided to the Project by Intelect.

72. The Carrier Consortium was unjustly enriched by the fair value of labor, materials and know-how provided to the Project Intelect in the amount of $1,013,016.83.

**COUNT VI**
**(Constructive Fraud)**

73. Paragraphs 1-72 are incorporated herein by reference and realleged as though more fully set out herein.

74. In light of the paynient procedures involved in the Project, wherein Intelect depended on the Carrier Consortium to make payments to Powerwave of the amounts invoiced from Intelect to Powerwave, as well as the obligations of the Carrier Consortium contained in the Contract Documents that the Project be bonded, a special relationship of trust and confidence existed among the Carrier Consortium and Intelect.

75. The Carrier Consortium had actual knowledge in the Fall of 2012 that Powerwave was financially unstable; that Intelect was relying on the Powerwave payment bond as its source of payment for labor and materials it was supplying to the Project; and that the Powerwave Payment Bond in fact offered no protection to Intelect.

76. The Carrier Consortium's failure to advise Intelect that Intelect was providing labor and materials to the benefit of the Carrier Consortium at its risk, due to the fact that the Powerwave Payment Bond did not provide protection to Intelect for the work in was performing, constituted constructive fraud.

77. As a direct and proximate result of the Carrier Consortium's constructive fraud, Intelect suffered damages in the amount of $1,013,016.83.

**COUNT VII**
**(Conversion)**

78. Paragraphs 1-77 are incorporated herein by reference and realleged as though more fully set out herein.

79. As the Project drew to a close, Powerwave ceased operations, defaulted on its contractual obligations to the Carrier Consortium, and ultimately filed for liquidation under Chapter VII of the Bankruptcy Code.

80. Induced by promises by the Carrier Group to Intelect that work on the Project would resume under a new contract within a reasonable time, Intelect permitted equipment, with a value of $360,000, including rail car platforms, coaxial cable reel exchangers, and other tools and equipment ("the Intelect Property") to remain at the WMATA rail yard so that it would be readily available if and (as was anticipated) when Intelect would be directed to resume work.

81. At no time did Intelect abandon the Intelect Property, and the sole reason which Intelect permitted its equipment to remain on site was to facilitate a prompt resumption of work.

82. Upon information and belief, the Carrier Consortium purported to purchase the Intelect Property in a bankruptcy-court approved transaction, notwithstanding actual knowledge that such property was owned by Intelect.

83. During the time that the Intelect Property has been sitting unused and not maintained, its value has been steadily diminishing. Return of the property at this time would not constitute adequate compensation for the Carrier Group's conversion of the Intelect Property.

84. As a direct and proximate result of the Carrier Group's conversion of the Intelect Property, Intelect has suffered damages in the amount of $360,000.

**COUNT VIII**
**(Promissory Estoppel)**

85. Paragraphs 1-84 are incorporated herein by reference and realleged as though more fully set out herein.

86. Upon the default and bankruptcy of Powerwave in February 2013, all progress on the Project was suspended.

87. In order to facilitate the prompt resumption of work under a replacement contractor, the Carrier Consortium represented to Intelect that work on the Project would resume in early Spring of 2013, and requested that Intelect leave its equipment and materials on site, and to continue to maintain its labor force in place.

88. As a direct and proximate result of the representations made by the Carrier Consortium, Intelect continued to incur the expense of continuing to employ its key employees, at a cost of $400,000.

WHEREFORE, Intelect prays for judgment in its favor and against Cellco/Verizon, AT&T/New Cingular, APC/Sprint Nextel, Sprint Nextel Mid-Atlantic, and T-Mobile, jointly and severally:

(1) As to Counts I, II, III, IV, V and VI, in the alternative, in the amount of $1,013,016.83;

(2) As to Count VII, in the amount of $360,000; and

(3) As to Count VIIII, in the amount of $400,000; and

(4) For interest from and after such payments should have been made, reasonable attorneys' fees, costs of suit, and such additional relief that this Court deems just and proper.

INTELECT CORPORATION

By: ______________________

Philip C. Jones, DC Bar # 196097
JONES & COHEN, LLC
1125 West Street, Suite 200
Annapolis, MD 21401
(410) 921-3360
pjones@jonescohenlaw.com

Brian Cohen, DC Bar # 448317
JONES & COHEN, LLC
1125 West Street, Suite 200
Annapolis, MD 21401
(410) 921-3360
bcohen@jonescohenlaw.com

JURY DEMAND

Plaintiff demands trial by jury.

______________________
Philip C. Jones

# THE AMERICAN INSTITUTE OF ARCHITECTS

Bond No. CMS242743

*AIA Document A312*

# Performance Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Powerwave Technologies, Inc.
1801 East St. Andrew Place
Santa Ana, CA 92705

SURETY (Name and Principal Place of Business):
**RLI Insurance Company**
P.O. Box 3967
Peoria, IL 61612-3967

OWNER (Name and Address):

See attached Multiple Obligee Rider

CONSTRUCTION CONTRACT
Date:
Amount:
Description (Name and Location): Turnkey Equipment Purchase, System Design and Construction Services Agreement, Phase 1

BOND
Date (Not earlier than Construction Contract Date): June 26, 2009
Amount: $5,000,000.00
Modifications to this Bond: ☐ None ☑ See Last Page

CONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
Powerwave Technologies, Inc.
1801 East St. Andrew Place

Signature: ______________________
Name and Title:

SURETY
Company: **RLI Insurance Company** (Corporate Seal)

Signature:
Name and Title: Joseph M. Pietrangelo
Attorney-in-Fact

(Any additional signatures appear on last page)

*(FOR INFORMATION ONLY -- Name, Address and Telephone)*

AGENT or BROKER:
Aon Surety
1001 Brickell Bay Drive, Suite 1100
Miami, FL 33131
305-961-6075

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984 1

ALL-STATE LEGAL®
A

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

3.1 The owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construc- tion Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4 When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly at the Surety's expense take one of the following actions:

4.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract; or

4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

.2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the owner.

6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Constuction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7 The Surety shall not be liable to the owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12 DEFINITIONS

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

The warranty period covered under this bond is limited to 12 months.

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: Powerwave Technologies, Inc. | (Corporate Seal) | Company: RLI Insurance Company | (Corporate Seal) |
| Signature: ______________________ | | Signature: Joseph M. Pietrangelo | |
| Name and Title: | | Name and Title: Joseph M. Pietrangelo, Attorney-in-Fact | |
| Address: 1801 East St. Andrew Place, Santa Ana, CA 92705 | | Address: Aon Surety, 1001 Brickell Bay Drive, Suite 1100, Miami, FL 33131 | |

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984 3

C0036901-50.0



5950 S. 52nd Street, Suite 209
Tempe, AZ 85284
Phone: 480-940-3420

# MULTIPLE OBLIGEE RIDER

To be attached to and form part of Bond Number CMS 242743 with RLI Insurance Company as Surety,

Powerwave Technologies, Inc. as Principal, and

Cellco Partnership and Washington SMSA Limited Partnership, each d/b/a Verizon Wireless (collectively "Verizon Wireless) respectively a Delaware General Partnership and a Virginia Limited Partnership, and each having its principal office and place of business at One Verizon Way, Basking Ridge, NJ 07920;

APC Realty and Equipment Company, LLC, a Delaware limited liability company, and Nextel Communications of the Mid-Atlantic, Inc. , a Delaware corporation, each d/b/a Sprint Nextel ("Sprint Nextel") and each having its principal office and place of business at 6391 Sprint Parkway, Overland Park, Kansas 66251-2020, Sprint/Nextel Property Services, Mailstop KSOPHT0101-Z2650;

New Cingular Wireless PCS, LLC, a Delaware limited liability company by and through its Manager AT&T Mobility Corporation, a Delaware corporation, both with a place of business at 12555 Cingular Way, Alpharetta, GA 30004 ("AT&T"); and

T-Mobile Northeast LLC, a Delaware Limited Liability Company ("T-Mobile") having its principal office and place of business at 12920SE 38th Street, Bellevue, WA 98006

as Obligees, for valuable consideration, hereby agree respectively in connection with a contract for

Turnkey Equipment Purchase, System Design & Construction Services Agreement, Phase I

which bond and contract are made a part hereof by reference.

This bond is subject to the condition that no Obligee shall have any right or action greater than those of any other Obligee and shall be subject to all offsets and defenses, however arising, which might be available against any other Obligee, their agents and representatives, in addition to any offsets or defenses that might be available against themselves.

In no event shall the Surety be liable in the aggregate to the Obligees for more than the penalty of this bond. At Surety's election, any payment due to any Obligee may be made by its check issued to the Obligees jointly.

Neither the execution nor language of this instrument, nor any previous negotiations, shall be construed as relieving any Obligee from the due and timely performance of such obligations and duties as he, or his agent or representative, may owe to the Principal or the Surety under the contract or bond.

WITNESS the following signatures and seals this 26th day of June, 2009

| Powerwave Technologies, Inc (Principal) | RLI Insurance Company (Surety) |
|---|---|
| By: ______________ (Name & Title) | Joseph M. Pietrangelo, Attorney-in-Fact |

Innovative



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Intelect Corporation
Plaintiff

vs.

Case Number 2015-CA-003401 B

Cellco Partnership GP
Defendant

Serve: CT Corporation System
1015 15th St NW
Washington DC 20005

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Philip C Jones
Name of Plaintiff's Attorney
Jones & Cohen LLC
Address 145 West St, Suite 200
Annapolis MD 21401
(202) 415-1813
Telephone

Clerk of the Court

By [signature]
Deputy Clerk

Date 05/21/2015

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

Intralinks Corporation
Demandante

contra

Número de Caso: 2015 CA 003401 B

Callcu Partnership LP
Demandado

Serve: CT Corporation System 1015 15th St NW Washington DC 20005

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Philip C. Jones
Nombre del abogado del Demandante

Jones & Gabel, LLC
1225 West St. Suite 200
Dirección Annapolis, MD 21401

202 475 1717
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: ______________________
Subsecretario

Fecha ______________________

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Intelect Corporation
Plaintiff

vs.

Case Number 2015-CA-003401B

New Cingular Wireless PCS GP
Defendant

Serve: CT Corporation System
1015 15th St NW
Washington DC 20005

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Philip C Jones
Name of Plaintiff's Attorney

Jones & Cohen LLC
Address 1?? West St, Suite 202
Annapolis MD 21401

(202) 415-1513
Telephone

Clerk of the Court

By [signature]
Deputy Clerk

Date 05/21/2015

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

Intelsat Corporation
Demandante

contra

Número de Caso: 2015 CA 003401 B

New Eagle Aircraft, PCSGP
Demandado

Serve: CT Corporation System
1015 15th St NW
Washington DC 20005

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Philip C. Jones
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

Jones & Cohen, LLC
1125 West St Suite 200
Dirección Annapolis, MD 21401

Por: ______________________
Subsecretario

202 495 1317
Teléfono

Fecha ______________________

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea converser con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

[illegible] Corporation
Demandante

contra

Número de Caso: 2015 CA 003901 B

ABC Realty and Equipment Co.
Demandado

Serve: Corporation Service Co.
1090 Vermont Ave NW
Washington, DC 20005

CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Phillip C. Jones
Nombre del abogado del Demandante

Jones & Cohen, LLC
1125 West St. Suite 200
Dirección Annapolis, MD 21401

202 775 1312
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: ______________________
Subsecretario

Fecha ______________________

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés.
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Intelect Corporation
Plaintiff

vs.

Case Number 2015-CA-003441B

Nextel Communications Mid-Atlantic, Inc.
Defendant

Serve: Corporation Service Co.
1090 Vermont Ave NW
Washington DC 20005

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Philip C. Jones
Name of Plaintiff's Attorney
Jones & Cohen LLC
Address 1125 West St Suite 200
Annapolis MD 21401
(202) 415-1313
Telephone

Clerk of the Court

By [signature]
Deputy Clerk

Date 05/21/2015

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요 [illegible] (202) 879-4828 [illegible]

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

Intelect Corporation
Demandante

contra

Número de Caso: 2015 CA 003901 B

Nextel Communications Mid-Atlantic, Inc. — Serve: Corporation Service Co. 1090 Vermont Ave NW Washington DC 20005
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Philip C. Jones
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

Jones & Cohen, LLC
1125 West St Suite 200
Dirección Annapolis, MD 21401

Por: ______________________
Subsecretario

202 [illegible] 1313
Teléfono

Fecha ______________________

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés.
See reverse side for English original.

CASUM.doc

Filed
D.C. Superior Court
05/22/2015 16:28PM
Clerk of the Court

Superior Court of the District of Columbia
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Intelect Corporation
Plaintiff

vs.

Case Number 2015 - CA - 003901 B

T-Mobile Northeast LLC
Defendant

Serve: Corporation Service Co.
1090 Vermont Ave., NW
Washington DC 20005

# SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Philip C. Jones
Name of Plaintiff's Attorney

Jones & Co. [illegible] LLC

Address 1123 West St Suite 200
Annapolis, MD 21401
(202) 415-1393
Telephone

Clerk of the Court

By [signature]
Deputy Clerk

Date 05/21/2015

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

Intelsat Corporation
Demandante

contra

Número de Caso: 2015 CA 003401 B

T-Mobile Northeast, LLC
Demandado

Serve: Corporation Service Co.
1090 Vermont Avenue
Washington DC 20005

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le requiere entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Philip C. Jones
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

Jones & Cohen, LLC
[illegible]
Dirección Annapolis, MD 21401

Por: ______________________
Subsecretario

202 [illegible]
Teléfono

Fecha ______________________

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

INTELECT CORPORATION
Vs. C.A. No. 2015 CA 003401 B
T-MOBILE NORTHEAST, LLC et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge STUART G NASH
Date: May 12, 2015
Initial Conference: 9:30 am, Friday, August 21, 2015
Location: Courtroom 200
500 Indiana Avenue N.W.

Caio.doc

**ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc